IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ORVILLE BROWN                    :
    Petitioner                   :
                                 :
        v.                       :      CIVIL ACTION
                                 :
IMMIGRATION AND                  :      NO. 02-2808
NATURALIZATION SERVICE, et al.   :
    Respondent.                  :

## <u>ORDER</u>

AND NOW on this _____ day of _____, 2002, upon

consideration of the Government's Response to Petitioner's Writ of Habeas Corpus, and

any response thereto, it is hereby ORDERED that the Petition is dismissed with

prejudice.


_____
U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ORVILLE BROWN | : | |
| Petitioner | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| IMMIGRATION AND | : | NO. 02-2808 |
| NATURALIZATION SERVICE, et al. | : | |
| Respondent. | : | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## PETITION FOR WRIT OF HABEAS CORPUS

The United States of America, by its attorneys, Patrick L. Meehan, United

States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant

United States Attorney for the District, on behalf of respondent, the Immigration and

Naturalization Service ("the Service"), files this response in opposition to the petitioner's

writ of habeas corpus.

I.      **INTRODUCTION**

This is a habeas petition brought under 28 U.S.C. § 2241 by Orville Brown,

a native and citizen of Jamaica. Brown entered the United States as a lawful permanent

resident on February 26, 1988. (See Exhibit 2). On January 26, 1994, Brown was

arrested for shooting at three individuals with a handgun in New York City. He was

indicted on several counts of attempted murder, reckless endangerment, and criminal use

and possession of a weapon. On January 22, 1996, Brown was convicted in New York

after a non-jury trial of criminal possession of a weapon in the second degree, assault in the second degree, and reckless endangerment in the first degree, all in violation of New York state law. (See criminal history records at Exhibit 1; Immigration Judge's decision at Exhibit 3, p.1). Brown was sentenced to three and one-half to ten years in prison. (See Exhibit 1, p.3; Board of Immigration Appeals decision at Exhibit 5, p.1).

On July 21, 1999, the Service issued a Notice To Appear, advising Brown that he was removable from the United States based on his criminal convictions. See 8 U.S.C. § 1227(a)(2)(A)(iii)(removable for being convicted of an aggravated felony) and § 1227(a)(2)(C) (removable for being convicted of a firearms offense). (See Notice to Appear, attached as Exhibit 2).

On March 13, 2000, the Immigration Judge ("IJ") held a hearing to decide whether Brown should be removed. Brown, represented by counsel, admitted the allegations contained in the Notice to Appear and conceded that he was removable from the United States. (See Exhibit 3, p.2). Brown did not make any application for relief from removal, and the IJ concluded that Brown was statutorily ineligible for any form of relief from removal. In particular, the IJ found that Brown was ineligible for the relief known as "cancellation of removal" because he had been convicted of an aggravated felony. (Id.).[1] The IJ therefore ordered Brown removed to Jamaica based on the charges

---

[1]    Under Section 240A of the Immigration and Nationality Act, codified at 8 U.S.C. § 1229b(a) (cancellation of removal for

in the Notice to Appear (i.e. that he had committed an aggravated felony and that he had been convicted of a firearms offense).  (Id., p.3).  Brown appealed the decision to the Board of Immigration Appeals ("BIA").

On January 28, 2002, the BIA dismissed Brown's appeal, affirming in part and reversing in part the order of the immigration judge.  (See Exhibit 5).  The BIA affirmed the decision that Brown was removable pursuant to 8 U.S.C. §1227(a)(2)(C) as an alien who had committed a firearms offense.  The BIA reversed the decision that Brown was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an aggravated felon, finding that his crime did not meet the definition of a "crime of violence."  However, the decision in Brown's favor on the aggravated felony issue was of no consequence, because the BIA found that Brown was still removable on the firearms charge and was still not eligible for any relief from removal, including cancellation of removal under 8 U.S.C. § 1229b.  (See Exhibit 5, p.7).

With regard to eligibility for cancellation of removal, it is undisputed that Brown met the requirement in 8 U.S.C. § 1229b(a)(1), of having been an alien lawfully

---

certain permanent residents), the Attorney General may
cancel removal in the case of an alien who is . . . deportable
from the United States if the alien - (1) has been an alien
lawfully admitted for permanent residence for not less than 5
years; (2) has resided in the United States continuously for 7
years after having been admitted in any status, and (3) has not
been convicted of any aggravated felony.

admitted for permanent residence for at least five years.  And due to the BIA's decision, Brown also met the requirement in 8 U.S.C. § 1229b(a)(3) that he had not been convicted of any aggravated felony.  However, the BIA explained that Brown was nonetheless ineligible for cancellation of removal because he had not met the requirement in 8 U.S.C. § 1229b(a)(2), providing that the alien must have "resided in the United States continuously for 7 years" after his admission.  As the BIA explained, "[8 U.S.C. § 1229b(d)] provides explicitly that such a period of residence following a lawful admission is 'deemed to end' at the time an alien *has committed* an offense referred to in section 212(a) that renders him removable under . . . [Section 237(a)(2)]."  (Exhibit 1, p.7) (emphasis in the original).  Therefore, although Brown was lawfully admitted to the United States on February 26, 1988, this period of continuous presence ended when he committed the crime on January 26, 1994, thus falling short of the 7 year requirement.

At the conclusion of his criminal sentence in New York, the Service took Brown into custody in order to carry out his removal to Jamaica.  Brown filed this habeas petition on or about May 11, 2002 in the Southern District of New York.  The case was transferred to the Eastern District of Pennsylvania because Brown was being detained by the Service at the Montgomery County Correctional Facility.[2]

---

[2]     This office was served with Brown's habeas petition on or about August 5, 2002.  By that time, the Service had already carried out Brown's removal to Jamaica on June 13, 2002.  (See INS printout reflecting removal to Jamaica at Exhibit 6).  We note that Brown had sought, but did not receive, a stay of his removal order.  Although Brown is no longer in custody,

Brown's petition raises two categories of claims. In Sections (a), (b), and (c) of the habeas petition, Brown makes various arguments about why he should have been found eligible for cancellation of removal, despite the application of the "clock-stopping rule" in 8 U.S.C. § 1229b(d) that was cited by the BIA as a basis for denying him relief. In Section (d) of the habeas petition, Brown argues that his rights under the equal protection clause of the Constitution were violated because he was not entitled to apply for a waiver of deportation under Section 212(h) of the Immigration and Nationality Act ("the Act") [8 U.S.C. § 1181(h)], which applies only to non-lawful permanent residents, but not to lawful permanent residents such as himself.

---

the Service nonetheless responds to the merits of the issues he raises in his petition. Undersigned counsel does not have a current address for Mr. Brown. A copy of this brief has been forwarded to the District Counsel's office, with a request that the brief be forwarded to Mr. Brown at his last known address, if the Service has one for him.

This Court has jurisdiction to review "final orders of removal" against criminal aliens under the habeas statute; 28 U.S.C. § 2241(c)(3); <u>Calcano-Martinez v. INS</u>, 533 U.S. 348, 121 S.Ct. 2268, 2270, 150 L.Ed.2d 392 (2001). The standard of review is legality. Because the petition establishes no illegality in the alien's removal order, it must be dismissed.

II.    **LEGAL ARGUMENT**

    A.    <u>Brown Is Not Entitled To Cancellation of Removal</u>

At his immigration hearing, Brown apparently did not seek any relief from removal. (See IJ's decision, Exhibit 3, p.2). However, he now argues in his habeas petition that he should be entitled to a form of relief known as "cancellation of removal," codified at Section 240A of the Act (8 U.S.C. § 1229b). Under 8 U.S.C. § 1229b(a) (cancellation of removal for certain permanent residents), the Attorney General may cancel removal in the case of an alien who is . . . deportable from the United States if the alien - (1) has been an alien lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony. 8 U.S.C. § 1229b(a). Cancellation of removal replaced a similar form of relief, known as a deportation waiver or a Section 212(c) waiver, that existed before Congress passed extensive amendments to the immigration laws in 1996.

As discussed above, Brown satisfied 8 U.S.C. § 1229b(a)(1) because he had been a lawful permanent resident for five years at the time of his immigration hearing. Although the IJ found that Brown had committed an aggravated felony, the BIA's reversal on that issue means that he would not have been excluded from seeking cancellation of removal based on subsection (a)(3). However, the BIA found that Brown did not meet the requirement in subsection (a)(2) relating to continuous physical presence.

On September 30, 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibiilty Act of 1996 ("IIRIRA"). In IIRIRA, Congress enacted the a provision, sometimes known as the "clock-stopping rule," that put a limitation on an alien's ability to accrue time toward the continuous physical presence requirement in the cancellation of removal provision. Under 8 U.S.C. § 1229b(d):

> Any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when the alien is served with a Notice to Appear . . ., or (B) when the alien has committed an offense referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest.

8 U.S.C. § 1229b(d).

The purpose of the clock-stopping rule was to put an end to situations where an alien could continue to accrue time toward the continuous presence requirement, even after he had committed a crime, or received notice that the Service was

instituting deportation proceedings against him. Because there were often long delays between the beginning of deportation proceedings, and the actual hearing before an IJ, an alien could reach the seven year threshold in that intervening time. Congress intended to stop this loophole with the enactment of the clock-stopping rule.

        1.    <u>The Clock-Stopping Rule Applies To Brown.</u>

Brown's attempts to escape the effect of the clock-stopping rule are unavailing. First, he argues that the clock-stopping rule does not apply when the offense committed is a firearms offense. (See section (a) of habeas petition). Petitioner cites <u>In Re Ignacio Campos-Torres</u>, 22 I&N Dec. 1289 (BIA 2000) for the proposition that a firearms offense does not stop the clock because the offense is not one "referred to in section 212(a)(2)" of the Act.

However, even accepting the analysis of the BIA in <u>Campos-Torres</u>, Brown would still be subject to the clock-stopping rule.[3] Under 8 U.S.C. § 1229b(d)(1), the clock stops when "the alien has committed an offense <u>referred to in section 212(a)(2)</u> that renders the alien . . . <u>removable from the United States under section 237(a)(2)</u>" (emphasis added). Under the theory in Campos-Torres, Brown's firearms conviction is

_____

[3]      We note that in a case with almost identical facts as in this case, the Court found that the clock-stopping rule <u>did</u> apply in the case of alien ordered removed based on a firearms conviction. The Court did not address the issue raised by <u>Campos-Torres</u>, but apparently did not find the BIA's theory to be persuasive. <u>See</u> <u>Worrell v. Ashcroft</u>, 207 F.Supp.2d 61, 68-69 (W.D.N.Y. 2002).

not an offense "referred to in Section 212(a)(2) [8 U.S.C. § 1182(a)(2)]" and therefore does not stop the clock. Brown is out of luck, however, because the firearms offense is not his only conviction. Brown was also convicted of assault in the second degree, and reckless endangerment in the first degree. (See Exhibit 1). Both of these crimes are crimes of moral turpitude, which are "referred to in section 212(a)(2)," and both crimes would render him "removable from the United States under section 237(a)(2)(A)(1)." See Matter of S-----, 5 I&N Dec. 668 (Int. Dec. (BIA) 1954), 1954 WL 7942 (BIA) (crime of assault in the second degree in New York is crime of moral turpitude); Matter of Goodalle, 12 I&N Dec. 106 (Int. Dec. (BIA) 1967), 1967 WL 13971 (BIA) (same); Yousefi v. INS, 260 F.3d 318, 326 (4th Cir. 2001) (alien's conviction for assault with a dangerous weapon was crime of moral turpitude for deportation purposes); Franklin v. INS, 72 F.3d 571, 573 (8th Cir. 1996) (giving deference to BIA's interpretation that criminally reckless conduct constituted a crime involving moral turpitude).[4]

       In any event, even if Brown could establish that the clock-stopping provision should not have barred him from seeking cancellation of removal, the decision to grant cancellation of removal is solely within the discretion of the Immigration Judge. There is no right to discretionary relief from deportation. See Jay v. Boyd, 351 U.S. 345,

---

    [4]    Under New York law, Reckless endangerment in the first degree is defined as follows: "A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." NY Penal § 120.25.

354 (1956) ("a grant of discretionary relief from deportation is a matter of grace, not right"); see also INS v. Abudu, 485 U.S. 94, 107-108 (1988).

The failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest. Riley v. Greene, 149 F.Supp.2d 1256, 1264 (D.Col. 2001)(holding that denial of alien's request to reopen deportation proceedings did not violate due process rights); Connecticut Bd. of Bardons v. Dumschat, 452 U.S. 458, 465 (1981). In this case, Brown had few equities in his favor given the egregious nature of his crime. Even if the reason for denying him relief might have changed, he suffered no constitutional deprivation based on the Immigration Judge's failure to grant him relief in the form of cancellation of removal.

2.    The Clock-Stopping Provision Applies to Brown Even Though He Committed His Crime Before the Enactment of IIRIRA.

In Section (b) of his habeas petition, Brown claims that retroactive application of the clock-stopping rule is unconstitutional. However, this argument is misguided because the Service instituted immigration proceedings against Brown in July, 1999, well after the passage of IIRIRA. Thus, the provision is not being applied to him retroactively. Even if it were being applied retroactively, the Third Circuit has already held that the retroactive application of the stop-time provision is constitutional. See Pinho v. INS, 249 F.3d 183, 189-90 (3d Cir. 2001); Uspango v. Ashcroft, 289 F.3d 226, 231 (3d Cir. 2002); see also Rojas-Reyes v. INS, 235 F.3d 115, 123 (2d Cir. 2000); Ram v. INS, 243 F.3d 510, 517 (9th Cir. 2001); Sibanda v. INS, 282 F.3d 1330, 1334 (10th Cir.

2002).

Moreover, the BIA permissibly applied the clock-stopping rule to him even though his criminal offense took place before the statute was enacted.  In Worrell v.Ashcroft, 207 F.Supp.2d 61 (W.D.N.Y. 2002), the Court considered almost identical facts to this case, and concluded that application of the clock-stopping rule was not impermissibly retroactive when the criminal offense predated the clock-stopping provision in IIRIRA.  The Court in Worrell concluded that the alien was never eligible for a waiver of deportation under the predecessor provision (Section 212(c)) of the cancellation of removal provision, because he had been convicted of a firearms violation. Id. at 68-69.  Brown was likewise ineligible for a waiver of deportation under Section 212(c) of the Act because his firearms conviction precludes any such relief.[5]  Because Brown would never have been entitled to relief under Section 212(c), "the enactment of 8 U.S.C. § 1229(d)(1) did not put [Brown] in any worse position," and the statute therefore is not impermissibly retroactive.  Id. at 68.

3.    Brown Cannot Accrue "Clean Time" After The Clock Stops.

Next, Brown tries to escape the clear application of the stop-time rule in 8 U.S.C. § 1229b(d)(1) by arguing that he should be able to accrue new time toward the seven year continuous physical presence requirement after the commission of his offense. In other words, Brown contends that the clock started to run anew after he committed his

---

[5]    Moreover, Brown was ineligible for relief under Section 212(c) for the additional reason that his conviction was the result of a trial, not a guilty plea.  (See Exhibit 5, p.7).

crime on January 26, 1994, and if he could get to seven years continuous residence before he was served with a Notice to Appear, then he would have qualified for cancellation of removal. (See section (c) of petitioner's brief).

The Eighth Circuit Court of Appeals confronted this issue in Afolayan v. INS, 219 F.3d 784, 788 (8th Cir. 2000), and found that the clock for continuous physical presence in the United States does not start anew once it stops. The Fifth Circuit Court of Appeals reached the same conclusion in McBride v. INS, 238 F.3d 371 (5th Cir. 2001). Looking at the legislative history behind the stop-time rule, the McBride Court noted that ". . . Congress is not likely to have meant to permit aliens to start over and accrue the entirety of their seven years presence here following termination of the initial period of accrual. Congress has expressed a desire to reduce the time that an alien can prolong his stay following issuance of a deportation order, a goal clearly furthered by the BIA's interpretation of the stop-time rule." Id. at 376-77. See also Worrell v. Ashcroft, 207 F.Supp.2d 61, fn.3 ("once the period of continuous residence terminates, it does not subsequently begin to run anew"); In re Mendoza-Sandino, Int. Dec. 3426, 2000 WL 225840 (BIA Feb. 23, 2000).

In any event, even accepting Brown's theory, he would not have qualified for seven years of continuous physical presence, because he was served with a Notice to Appear on July 21, 1999. A Notice to Appear stops the clock again, and he would have had only five and one-half years between the commission of the offense on January 26, 1994, and the issuance of the Notice to Appear. See 8 U.S.C. § 1229b(d)(1)(A).

-12-

B.    The Denial of Relief Under Section 212(h) of the Act Does Not Violate Petitioner's Due Process Rights.

Finally, Brown argues that it was a violation of his due process rights because he was not permitted to apply for a waiver of deportation under Section 212(h) of the Act [8 U.S.C. § 1182(h)], also known as a hardship waiver.  (See section (d) of habeas petition).    The hardship waiver, by its specific language, is only available to those aliens who are not lawful permanent residents ("LPRs").  Brown, and countless other aliens who are LPRs, have challenged 8 U.S.C. § 1182(h) as a violation of equal protection because of the distinction it draws between LPRs and non-LPRs.

This argument is foreclosed by the Third Circuit's recent ruling in De Leon-Reynoso v. Ashcroft, 293 F.3d 633 (3d Cir. 2002), in which the Court specifically ruled that it was not an equal protection violation that the hardship waiver in 8 U.S.C. § 1182(h) of the Act applies only to non-LPRs and not to LPRs.  The Court found that the distinction survived rational basis scrutiny since Congress could have concluded that LPRs, who have employment and family ties to the United States but were still willing to commit certain serious crimes were uniquely poor candidates for a waiver.  Id. at 640. See also Lukowski v. INS, 279 F.3d 644, 648 (8th Cir. 2002) ("[Section] 1182(h) easily passes equal protection muster"); Lara-Ruiz v. INS, 241 F.3d 934, 947 (7th Cir. 2001) (noting several rational bases for the distinction between LPRs and non-LPRs in Section 1182(h)).

-13-

III.    <u>CONCLUSION</u>

       Petitioner Brown cannot establish any violation of the Constitution or statutes of the United States, and there is no basis for the Court to grant the relief he requests.  For the foregoing reasons, the government respectfully requests that the Court dismiss the Petition with prejudice.

                             Respectfully,

                             PATRICK L. MEEHAN
                             United States Attorney

Dated: October    , 2002          _____

                             JAMES G. SHEEHAN
                             Assistant United States Attorney
                             Chief, Civil Division

                             _____

                             SUSAN R. BECKER
                             Assistant United States Attorney
                             615 Chestnut Street, Suite 1250
                             Philadelphia PA 19106-4476
                             (215) 861-8310 Telephone
                             (215) 861-8349 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the      day of October, 2002, I caused a true and correct

copy of the foregoing Government's Response to Plaintiff's Petition for Writ of Habeas

Corpus to be served by first class mail, postage prepaid, upon the following:

> Orville Brown
> c/o Office of District Counsel
>  Immigration and Naturalization Service
> 1600 Callowhill Street, 4th
> Philadelphia, PA 19130

> Pro se petitioner

_____

Susan R. Becker