IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ORVILLE BROWN,
    Petitioner               :
                             :
    v.                       :
                             :
IMMIGRATION & NATURALIZATION  :
SERVICE                     :
    Respondent.           :       No. 02-CV-2808

### MEMORANDUM AND ORDER

**J. M. KELLY, J.**                            **JANUARY     , 2003**

      Presently before the Court are a Petition for Writ of Habeas Corpus filed by pro se Petitioner Orville Brown ("Brown") and the response of Respondent Immigration and Naturalization Service ("INS"), thereto. Brown, a legal permanent resident, was convicted of criminal possession of a weapon in the second degree, assault in the second degree and reckless endangerment in the first degree in violation of New York state law. After serving roughly three years in a New York state penitentiary, INS filed a Notice to Appear and initiated deportation proceedings against him. Although Brown conceded his deportability, he applied for and was ultimately refused relief in the form of cancellation of removal pursuant to Section 240A of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1229b, and waiver under Section 212(h) of the INA, codified at 8 U.S.C. § 1182, by both Immigration Judge Adam Opaciuch ("Judge Opaciuch") and the Board of Immigration Appeals ("BIA"). Claiming due process and equal protection violations, in the

instant motion, Brown argues that the BIA wrongly determined that he was ineligible to receive a waiver and impermissibly applied provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") retroactively in denying him cancellation of removal relief.  In response, INS claims that applicable IIRIRA provisions preclude Brown from receiving cancellation of removal relief because he fails to satisfy the seven-year continual residency requirement as mandated under Section 240A.  We agree that the residency accrual limitations set forth in IIRIRA apply and that Brown's equal protection objections to a waiver pursuant to Section 212(h) fail, but, we must remand Brown's claim to the BIA in order for it to reconcile its decision that Brown committed an offense that stopped his residency accrual pursuant to Section 240A with BIA precedent. Thus, for the following reasons, Brown's motion is STAYED pending remand to the BIA for clarification concerning Brown's request for Section 240A relief consistent with the following opinion.


## I.  BACKGROUND

On February 26, 1988, Brown, a Jamaican native and citizen, entered the United States as a lawful permanent resident.  On January 26, 1994, Brown was arrested for shooting at three individuals with a handgun in New York City, New York and, as a result, was indicted on several counts of attempted murder,

assault, reckless endangerment and criminal use and possession of a weapon.[1]  On January 22, 1996, after a non-jury trial, Brown was convicted by the New York Supreme Court of criminal possession of a weapon in the second degree, assault in the second degree and reckless endangerment in the first degree.  He was subsequently sentenced to a term of three and one-half to ten years in prison.

On July 21, 1999, the INS issued a Notice to Appear, which informed Brown that, as a result of his criminal convictions, he was removable from the United States.  On March 13, 2000, Brown, accompanied by his counsel, appeared before Judge Opaciuch.  Brown conceded the allegations contained in the Notice to Appear and agreed that he was removable from the United States.  Judge Opaciuch concluded that Brown was removable to Jamaica based on the charges included in the Notice to Appear and found no statutory relief to which Brown was entitled.  Importantly, Judge Opaciuch concluded that cancellation of removal was not warranted because Brown's convictions constituted an aggravated felony within the parameters of 8 U.S.C. § 1227(a)(2)(A)(iii).  Brown subsequently appealed Judge Opaciuch's decision to the BIA.  On

---

[1]  Specifically, Brown was indicted on three counts of attempted murder in the second degree, one count of assault in the first degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree, reckless endangerment in the first degree and criminal possession of a controlled substance in the fourth degree.  (INS Ex. 1.)

January 28, 2002, the BIA dismissed Brown's appeal, affirming in part and reversing in part Judge Opaciuch's decision.  The BIA disagreed with Judge Opaciuch's interpretation of the phrase "aggravated felony" and reversed Judge Opaciuch's decision that Brown's crimes satisfied this description.  The BIA nevertheless determined that Brown had not resided in the United States continuously for seven years after his admission, thereby precluding him from relief in the form of cancellation of removal pursuant to Section 240A.

After serving his criminal sentence in New York, Brown was detained at the Montgomery County Correctional Facility in Eastern Pennsylvania pending deportation.  On May 11, 2002, Brown filed the instant motion in the Southern District of New York, which was subsequently transferred to the Eastern District of Pennsylvania.  On June 13, 2002, the INS executed Brown's removal to Jamaica, where he presently resides.

## II.  DISCUSSION

Despite the many amendments to the INA, such as IIRIRA and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[2] this Court maintains jurisdiction to hear and determine petitions for writs of habeas corpus only in respect to legal or constitutional issues.  Calcano-Martinez v. INS, 533

---

[2]  Pub. L. No. 104-132, 110 Stat. 1214 (1996).

4

U.S. 348, 351-52 (2001); <u>Steele v. Blackman</u>, 236 F.3d 130, 133 (3d Cir. 2001).  Although BIA conclusions of law are reviewed de novo, factual findings are provided considerable deference. <u>Patel v. Ashcroft</u>, 294 F.3d 465, 467 (3d Cir. 2002); <u>Toutounjian v. INS</u>, 959 F. Supp. 598, 600 (W.D.N.Y. 1997).  In his instant motion for habeas relief, Brown argues that the BIA violated the Equal Protection Clause of the Fifth Amendment when it determined that he was ineligible to apply for a waiver pursuant to Section 212(h).  Brown also contends that applying IIRIRA's so-called "stop-time" rule, which halts the accrual time for the seven-year continual residency requirement necessary to qualify for cancellation of removal relief, would go against the policy disfavoring retroactive application of statutes.  Even if this Court were to apply the stop-time provision, Brown states that he nevertheless satisfies the seven-year residency requirement under Section 240A because his convictions do not trigger the stop-time rule.

**A.  Mootness**

Although neither party raises the jurisdictional issue of mootness or questions whether Brown is "in custody" for purposes of habeas relief, as a preliminary matter, we are required to raise these issues <u>sua sponte</u> in order to solidify our jurisdiction over the matter.  <u>St. Paul Fire & Marine Insurance</u>

Co. v. Barry, 438 U.S. 531, 537 (1978); Moi Chung v. Dist. Dir.
INS, 264 F.3d 378, 383 (3d Cir. 2001).  We are satisfied that
Brown's habeas claim, pursuant to 28 U.S.C. § 2241, is properly
before this Court despite the fact that he no longer resides in
the United States.  Section 2241(c) cautions that a "writ of
habeas corpus shall not extend to a prisoner unless – (1) He is
in custody under or by color of the authority of the United
States or is committed for trial before some court thereof . . .
."  28 U.S.C. § 2241(c) (emphasis added).  Although Brown is not
currently detained in the United States, he is sufficiently
"in custody" because he was imprisoned as of the date the
petition was filed in this Court.  Moi Chung, 264 F.3d at 383
(asserting that custody requirement is measured from time
petitioner filed for habeas relief); United States ex rel.
Wojtycha v. Hopkins, 517 F.2d 420, 423 n.6 (3d Cir. 1975) (same).

     We also find that Brown's claim continues to present a
viable Article III, Section 2 case or controversy, and therefore,
is not moot despite his deportation to Jamaica.  U.S. Const. art.
III, § 2.  A case or controversy is presumably established when
the petitioner is incarcerated.  However, when the petitioner is
no longer detained or paroled, "some concrete and continuing
injury other than the now-ended incarceration or parole – some
'collateral consequence' of the conviction – must exist if the
suit is to be maintained."  Spencer v. Kemna, 523 U.S. 1, 7

(1998) (citations omitted); <u>United States v. Romero-Vilca</u>, 850 F.2d 177, 179 (3d Cir. 1988).  Since Brown did not voluntary leave the United States, the BIA ordered him deported, thereby preventing him from reentering the United States for a period of 10 years.  <u>See</u> INA § 212(a)(9)(A)(ii), as codified in 8 U.S.C. § 1182 (2000) (stating that an alien who is ordered removed "and who seeks admission within 10 years of the date of such aliens departure or removal . . . is inadmissible").  Brown's inability to reside legally in the United States for a significant future period of time evidences a sufficient collateral consequence of removal to render Brown's claim a viable case or controversy under Article III.  <u>Moi Chung</u>, 264 F.3d at 385; <u>Tapia-Garcia v. INS</u>, 237 F.3d 1216, 1218 (10th Cir. 2001); <u>Max-George v. Reno</u>, 205 F.3d 194, 196 (5th Cir. 2000) (determining that collateral consequences exist from a determination of inadmissability).  Having disposed of the jurisdictional issues, we are now able to address the merits of Brown's petition.

**B.  Waiver under Section 212(h)**

    Brown claims that the BIA violated the Equal Protection Clause of the Fifth Amendment[3] by reserving Section 212(h) waiver

---

    [3]  Due Process safeguards under the Fifth Amendment "commands that no State shall 'deny to any person within its jurisdiction that equal protection of the laws,' which is essentially a direction that all persons similarly situated

relief for only non-lawful permanent residents, thereby depriving similarly situated permanent legal residents the opportunity to apply for a waiver.  U.S. Const. amend. XIV, § 1; See 8 U.S.C. § 1182(h).  Pursuant to Section 212(h), an alien may petition the Attorney General to waive removal from the United States despite an alien's criminal convictions.  However, a Section 212(h) waiver, also known as a "hardship waiver," is expressly limited to aliens who are not lawful permanent residents.[4]

Although this provision does create a distinction between legal permanent residents and those aliens who have not achieved this status, we respect the legislative authority Congress commands over matters of immigration and conclude that an equal protection challenge to Section 212(h) must fail.  See, e.g., Leon-Reynoso v. Ashcroft, 293 F.3d 633, 639 (3d Cir. 2002)

should be treated alike."  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985) (citing U.S. Const. amend. XIV, § 1).

[4]  Section 212(h), in pertinent part, provides:

No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

8 U.S.C. § 1182(h).

(holding this disparity does not violate Equal Protection Clause); Jankowski-Burczyk v. INS, 291 F.3d 172, 180-81 (2d Cir. 2002); Lukowski v. INS, 279 F.3d 644, 647 (8th Cir. 2002) (same); Moore v. Ashcroft, 251 F.3d 919, 925 (11th Cir. 2001) (same); Lara-Ruiz v. INS, 241 F.3d 934, 947 (7th Cir. 2001) (same). The United States Court of Appeals for the Third Circuit, in Leon-Reynoso v. Ashcroft, rejected an equal protection challenge to Section 212(h) identical to Brown's and concluded that Congress had several rational reasons for distinguishing between legal permanent residents and non-legal permanent residents. 293 F.3d at 639. Although the Leon-Reynoso Court conceded that it did not endorse the distinction underlying Section 212(h) and suggested that Congress "reconsider the ramifications of entirely eliminating the Attorney General's discretion in this area," ultimately, the Third Circuit determined that this disparity did not violate the Equal Protection Clause. Id. at 640-41. Following precedent set forth in Leon-Reynoso, we must hold that Section 212(h) does not violate the Equal Protection Clause of the Fifth Amendment and must deny Brown's claim accordingly.

## C.  Cancellation of Removal

### 1.  Effect of IIRIRA

Brown next contends that this Court should not abide by

current IIRIRA provisions, but should follow pre-IIRIRA procedures in place at the time of his conviction.  Cancellation of removal, a form of relief introduced by IIRIRA, affords aliens relief from pending removal provided that certain conditions are satisfied and approval from the Attorney General is gained.  See 8 U.S.C. § 1229b.  Prior to the enactment of the IIRIRA amendments, aliens seeking discretionary relief from removal would petition the Attorney General for a waiver pursuant to Section 212(c) of the INA, which provided:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs (d) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1991) (repealed).  Regardless of the unambiguous language of Section 212(c), the BIA interpreted the provision as not only applying to aliens who were seeking reentry, but also affording relief to those requesting waiver from deportation.  See INS v. St. Cyr, 533 U.S. 289, 294 (2001); Green v. INS, 46 F.3d 313, 315 (3d Cir. 1995) (citing Matter of Silva, 16 I. & N. 26, 30 (BIA 1976)).  Under this framework, the

Attorney General, in his discretion, would weigh favorable
considerations – such as family ties, evidence of hardship and
the length of United States residency - with undesirable factors
- such as bad character and the existence and nature of a
criminal record.  <u>Tipu v. INS</u>, 20 F.3d 580, 583 (3d Cir. 1994).
In 1996, Congress amended the INA through the enactment of AEDPA,
which cut off Section 212(c) relief to deportable aliens
convicted of various offenses, including aggravated felonies,
drug convictions and multiple convictions involving crimes of
moral turpitude.  <u>See</u> Pub. L. 104-132, 110 Stat. 1214 (1996)
(amending 8 U.S.C. § 1182(c)).  Five months after the passage of
AEDPA, Congress again altered its procedures for relief from
deportation by enacting IIRIRA, which repealed Section 212(c) and
replaced the waiver process with "cancellation of removal" relief
under Section 240A.  <u>See</u> 8 U.S.C. § 1229b.  This enactment
considerably limited the Attorney General's ability to exercise
his discretion to stop the removal of aliens convicted of
aggravated felonies.  <u>See</u> 8 U.S.C. § 1229b(a)(3); <u>Perez v.
Elkwood, Dist. Dir.</u>, 294 F.3d 552, 556 (3d Cir. 2002).

Under IIRIRA's framework, cancellation of removal is
warranted when a lawfully admitted permanent resident, who is
deportable or inadmissible from the United States,:

> (1) has been an alien lawfully admitted for permanent
> residence for no less than five years,
> (2) has resided in the United States continuously for
> seven years after having been admitted in any status,

and
  (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(d). Neither party contests the fact that Brown

qualifies as an alien lawfully admitted for permanent residence

for at least five years. Moreover, the BIA's conclusion that

Brown's convictions do not qualify as an aggravated felony is

similarly uncontested. Rather, the issues before the Court focus

on whether (1) Brown is subject to IIRIRA's stop-time rule, and

(2) provided Brown is subject to the stop-time rule, does he

nevertheless satisfy the seven-year residency requirement

necessary to issue relief in the form of cancellation of removal.

    The stop-time rule contained in IIRIRA, as set forth in

Section 240A(d), provides:

> For purposes of this section, any period of continuous
> residence of continuous physical presence in the United
> States shall be deemed to end when the alien is served
> a notice to appear under section 1229(a) of this title
> or when the alien has committed an offense referred to
> in section 1182(a)(2) of this title that renders the
> alien inadmissible to the United States under section
> 1182(a)(2) of this title or removable from the United
> States under section 1227(a)(2) or 1227(a)(4) of this
> title, whichever is earliest.

8 U.S.C. § 1229b(d)(1). Prior to IIRIRA's enactment, time spent

in deportation proceedings counted towards the seven-year

physical presence requirement such that the accrual period

commenced on the date the alien entered the United States and

continued to the date of application for suspension of

deportation. See 8 U.S.C. § 1254(a)(1) (1994); Sibanda v. INS,

282 F.3d 1330, 1333 (10th Cir. 2002).  In promulgating IIRIRA's stop-time provision, Congress sought to limit an alien's ability to continue accruing years of physical presence by stopping the accrual period on the date the alien is served with an order to appear or when he commits certain offenses.  See 8 U.S.C. § 1229b(d)(1).


### 2.  Retroactivity

First, Brown contends that he is not bound by the stop-time rule because his convictions pre-date IIRIRA, which went into effect on April 1, 1997.[5]  He claims that this Court should refrain from retroactively applying IIRIRA procedures without evidence of specific Congressional intent.  However, after reviewing Third Circuit precedent, we conclude that IIRIRA procedures apply to Brown's case under the two-step analysis set forth in Landgraf v. USI Film Products, 511 U.S. 244 (1994), and that application of the stop-time rule is not impermissibly retroactive.[6]

_____

[5]  Brown's criminal convictions occurred prior to IIRIRA's 1997 effective date, but INS did not initiate removal proceedings until it served a Notice to Appear on July 21, 1999.  See 8 U.S.C. § 1229 (stating removal proceedings commence when the INS files charging document); Jimenez-Angeles v. Ashcroft, 291 F.3d 594, 597-98 (9th Cir. 2002) (stating that removal proceedings commence when INS files notice to appear).

[6]  We note that the Third Circuit has criticized the claim that application of IIRIRA to pre-IIRIRA convictions constitutes a retroactive application, stating that it was "likely that

To determine whether a statutory provision may be applied retroactively, <u>Landgraf</u> instructs that a court must examine:

> 1.  if Congress prescribed the statute's temporal reach, and, provided it has not,
> 2.  whether application of the statute to the conduct at issue would have a "retroactive effect."

<u>Landgraf</u>, 511 U.S. at 267-70; <u>see also</u> <u>St. Cyr</u>, 533 U.S. at 316-17; <u>Perez</u>, 294 F.3d at 557.  A statute creates a retroactive effect when it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." <u>St. Cyr</u>, 533 U.S. at 321 (citations omitted).  If retroactive application creates such an effect, courts must only apply the statute prospectively.  In <u>INS v. St. Cyr</u>, the United States Supreme Court recently encountered such a situation in which an alien entered into a plea agreement prior to the enactment of IIRIRA and AEDPA only to discover that after enactment of the 1996 amendments, relief pursuant to Section 212(c) was no longer available to aliens pleading guilty.

---

Congress had intended the amended version of Section 1182(c) to apply to convictions preceding the amendment." <u>Perez</u>, 294 F.3d at 558 (citing <u>DeSousa v. Reno</u>, 190 F.3d 175, 186 (3d Cir. 1999)).  However, the Third Circuit also concluded that the issue was not "absolutely clear" and nevertheless engaged in an analysis under <u>Landgraf</u> to determine if applying IIRIRA to pre-IIRIRA convictions was impermissibly retroactive.  <u>Id</u>.  Since the stop-time provision does not clearly express Congress' intent, we agree that analysis under <u>Landgraf</u> is proper in the instant case.

Id. at 293.  Recognizing that retroactive application would attach a new penalty to the alien's previous decision to enter into a plea agreement, the Supreme Court, applying the Landgraf framework, concluded that imposing IIRIRA's ban on Section 212(c) relief "would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations."  Id. at 323 (citations omitted).

The situation presented in St. Cyr, however, is readily distinguishable from the instant case, which does not raise similar concerns associated with retroactive application under the Landgraf framework.  Although Congress did not expressly provide for retroactive application of IIRIRA's stop-time rule, the second prong of the Landgraf test requires that we also look to whether retroactive application produces an impermissible effect.  See St. Cyr, 533 U.S. at 318-20; Perez, 294 F.3d at 558.

Unlike St. Cyr, application of IIRIRA does not raise issues of notice or reasonable reliance and, thus, we do not find that retroactive application creates an impermissible effect on Brown. Even though Brown's convictions occurred before the enactment of IIRIRA, it is indisputable that Brown always faced the same consequences of his actions -- criminal sanction and deportation. IIRIRA's passage did not change the nature of his criminal convictions or attach new punishments for his actions.  Rather, IIRIRA only impacted Brown's ability to qualify for prospective,

15

discretionary relief from removal.  The Third Circuit, in

resolving whether two separate amendments to Section 212(c)

should apply to pre-amendment convictions, stated:

> The consequences of petitioner's criminal conduct were
> clear at the time of that conduct and they remain
> unchanged today.  He was subject to possible criminal
> sanctions and deportation.  The only relevant change in
> the law relates to the permissible scope of the
> Attorney General's discretion to grant relief from one
> of those consequences.  Like statutes altering the
> standards for injunctive relief, this change has only a
> prospective impact.  It is not designed to remedy the
> past but only to affect petitioner's future status with
> regard to the legality of his presence in the United
> States.

Scheidemann v. INS, 83 F.3d 1517, 1523 (3d Cir. 1996); see also

Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 308 (5th Cir.

1999); Asad v. Reno, 67 F. Supp. 2d 886, 891 (M.D. Tenn. 1999).

We agree with this analysis and conclude that although IIRIRA may

have caused increased difficulty in Brown's ability to qualify

for cancellation of removal relief, this obstacle does not amount

to a "new disability" or qualify as a frustration of any

expectation Brown may have had in attaining totally discretionary

relief.  See Pinho v. INS, 249 F.3d 183, 189 (3d Cir. 2001)

("Since the relief had not yet been granted and was discretionary

even if the alien met all eligibility criteria, the change in

eligibility criteria did not . . . impair vested rights . . . .

Since no vested rights were affected in this case, no potential

violation of due process exists.").  Since Brown could not

reasonably rely on obtaining relief in the form of cancellation

of removal, we cannot conclude that applying IIRIRA provisions conflicted with Brown's expectations, denied him fair notice or in any way demonstrates impermissive retroactive application. See, e.g., DeSousa v. Reno, 190 F.3d 175, 187 (3d Cir. 1999) (holding AEDPA provision applies to aliens with pre-AEDPA convictions).

Furthermore, we find it difficult to conclude that our application of IIRIRA would have an impermissible effect since, even under pre-IIRIRA law, Brown was likely ineligible for relief from removal because he had been convicted of a firearms violation.  See Samuel v. INS, No. 95-9523, 1996 U.S. App. LEXIS 5683, at *3 (10th Cir. Mar. 28, 1996) (noting that discretionary waiver under Section 212(c) is unavailable when a ground of deportation, such as a firearms conviction, has no analogous ground of exclusion); Gjonaj v. INS, 47 F.3d 824, 827 (6th Cir. 1995) (same); Rodriguez v. INS, 9 F.3d 408, 412-13 (5th Cir. 1993) (holding Section 212(c) relief is unavailable for aliens deportable as result of firearms convictions); Campos v. INS, 961 F.2d 309, 315 (1st Cir. 1992) (same); Worrell v. Ashcroft, 207 F. Supp. 2d 61, 68-69 (W.D.N.Y. 2002) (noting petitioner was ineligible for relief under Section 212(c) because he was convicted of a firearms offense).  Although our application of the stop-time rule would create an impermissible retroactive effect had Brown already accrued eligibility for this relief, it

17

is clear that even under pre-IIRIRA law, Brown, as an individual convicted of a firearms offense, did not accrue time towards discretionary relief because he was not entitled to this relief. Thus, even were we to agree with Brown and hold that his case is governed by the law as it existed prior to the 1996 amendments, he would still not qualify for the relief he seeks.  See, e.g., Chukwuezi v. Ashcroft, 48 Fed. Appx. 846, 851-52 (3d Cir. 2002) (noting that petitioner could not reasonably rely on availability of Section 212(c) relief since it was unavailable to him).  Thus, we conclude that applying IIRIRA's stop-time provision to Brown's pre-enactment convictions simply does not raise concerns about fair notice, reasonable reliance, or settled expectations that are present when application of a statute has a true retroactive effect.  Therefore, we fail to see any impermissible retroactive effect to substantiate Brown's claim.

### 3.  BIA's Decision to Apply Stop-Time Provision

Second, Brown alleges that the stop-time rule does not apply since he did not commit an offense "referred to in section 212(a)(2)" which are the only offenses that operate to cut off time as provided in Section 240A(d).  See 8 U.S.C. § 1182(a)(2). Section 212(a)(2) address crimes of moral turpitude.[7]  Under the

---

[7]  Section 212(a)(2) provides, in pertinent part:

Except as provided in clause (ii), any alien convicted

language of Section 240A(d), only offenses referred to in Section 212(a)(2) that render the alien removable from the United States under Section 237(a)(2) or Section 237(a)(4) serve to stop the clock for purposes of cancellation of removal relief.[8]  See 8

---

    of or who admits having committed, or who admits
    committing acts which constitute the essential elements
    of–
            (I) a crime involving moral turpitude (other
        than a purely political offense) or an attempt or
        conspiracy to commit such a crime, or
            (II) a violation of (or a conspiracy or
        attempt to violate) any law or regulation of a
        State, the United States, or a foreign country
        relating to a controlled substance (as defined in
        section 802 of Title 21),
    is inadmissible.

8 U.S.C. § 1182(a)(2).


    [8]  Section 237(a)(2) provides, in pertinent part:

    (2)  Criminal offenses
        A.  General Crimes
        (i) Crimes of moral turpitude
        Any alien who–
            (I) is convicted of a crime involving moral
        turpitude committed within five years (or 10 years
        in the case of an alien provided lawfully
        permanent residence status under section 245(j) [8
        U.S.C.A. § 1255(j)]) after the date of admission,
        and
            (II) is convicted of a crime for which a
        sentence of one year or longer may be imposed.

    is deportable.

8 U.S.C. § 1227(a)(2).

Section 237(a)(4) provides, in pertinent part:

    (4)  Security and related grounds
        A.  In general

U.S.C. § 1182; 8 U.S.C. § 1227.  The BIA determined that Brown
was removable based on his conviction for criminal possession of
a firearm pursuant to Section 237(a)(2)(C).[9]  However, according
to the language of Section 240A, the stop-time provision only
applies if Brown committed an offense referred to in Section
212(a)(2) or 237(a)(2) that rendered him removable from the
United States.  The BIA provides no insight into which crime
Brown committed that is both referred to in Section 212(a)(2) and
rendered him removable based on his firearms conviction.  Rather,
the BIA simply states:

    Section 240A(d) of the [INA] provides explicitly that

_____

       Any alien who has engaged, is engaged, or at any time
    after admission engages in-
          (i) any activity to violate any law of the United
    States relating to espionage or sabotage or to violate
    or evade any law prohibiting the export from the United
    States of goods, technology, or sensitive
    information....

    is deportable.

8 U.S.C. § 1227(a)(4).

    [9]  Section 237(a)(2)(C) provides:

    Any alien who at any time after admission is convicted
    under any law of purchasing, selling, offering for
    sale, exchanging, using, owning, possessing, or
    carrying, or of attempting or conspiring to purchase,
    sell, offer for sale, exchange, use, own, possess, or
    carry, any weapon, part, or accessory which is a
    firearms or destructive device (as defined in section
    921(a) of Title 18) in violation of any law is
    deportable.

8 U.S.C. § 1227(a)(2)(C).

> such a period of residence following a lawful admission
> is deemed to end at the time an alien has committed an
> offense referred to in Section 212(a) that renders him
> removable under 212(A) of 237(a)(2) or (4).  Since the
> respondent committed the offenses in 1994, his period
> of continuous residence ended over 1 year before he
> would have had the 7 years needed to establish
> statutory eligibility.

These conclusory statements fail to explain which specific

conviction triggered the time-stop provision, belying the BIA's

assertion that Section 240A(d) even applies to Brown.  If Brown's

1994 offenses indeed amounted to a crime referred to in Section

212(a)(2), it is clear that he would not satisfy the seven-year

continual residency requirement since he was only admitted as a

legal permanent resident in 1988.  However, this assertion can

only be true if the BIA determined that Brown committed a Section

240A offense referred to in Section 212(a)(2).  In its prior

opinions, the BIA has stressed the importance of adhering to the

plain language of Section 240A(d), stating:

> The statute could easily have been drafted without the
> phrase 'referred to in section 212(a)(2),' or it could
> have been written so that any offense in sections
> 212(a)(2), 237(a)(2), or 237(a)(4) would operate to cut
> off time, as the [INS] contends that Congress intended.
> But that is not what the statute says, and it would
> take far more than a simple grammatical correction to
> reach the meaning urged by the [INS].  Our task is not
> to improve on the statute or to question the wisdom of
> it, but rather to interpret the language that was
> enacted as law.

Re: Campos-Torres, No. A91-089-115, 2000 BIA LEXIS 5, at *10-11

(BIA Mar. 21, 2000).  We strongly agree that a plain language

21

reading of Section 240A(d) requires identification of an offense "referred to in section 212(a)(2)" to trigger the stop-time rule. Accordingly, we are distressed that the BIA fails to provide an analysis, in accordance with its prior cases, addressing which offense of Brown's triggers the stop-time provision foreclosing relief under Section 240A.

We can only speculate that the BIA intended that Brown was both removable and ineligible for cancellation of removal relief for his firearm conviction, as the second degree assault and reckless endangerment convictions are obviously not offenses that would render Brown removable pursuant to Section 237(a)(2)(C), which only refers to crimes involving firearms. However, this determination seemingly contradicts a recent BIA decision that addresses whether a firearms conviction is referred to in Section 212(a)(2) for purposes of invoking the stop-time rule. See Re: Campos-Torres, 2000 BIA LEXIS 5. In Re: Campos-Torres, the BIA held that a firearms offense is not an offense referred to in Section 212(a)(2) and therefore does not stop time under Section 240A. Id. at *16. In the instant case, the INS offers just one conclusory statement in its brief that Brown's convictions for reckless endangerment in the first degree and second degree assault are offenses referred to in Section 212(a)(2). However, the INS operates on a misreading of Section 240A(d) even if these convictions are included in Section 212(a)(2). Since the BIA has

22

already determined that Brown was removable from the United
States based only on his firearms conviction, it clearly follows
that it was not his assault or reckless endangerment convictions,
even if they were referred to in Section 212(a)(2), that rendered
Brown removable.  INS cannot, at this juncture, substitute its
own reasoning for the BIA's rationale underlying the decision to
find Brown removal.  Again, we stress that the BIA has already
determined that Brown is removable based on his firearms
conviction.  Neither Judge Opaciuch nor the BIA have ever
suggested that Brown was removable under Section 237(a)(2)(A)(1),
which refers to crimes of moral turpitude.  This Court, looking
at pure issues of legality, is not authorized to find a new
ground for removing Brown.  Thus, we reject the INS' post-hoc
recommendation that Brown is removable under Section
237(a)(2)(A)(1).


### III.  <u>CONCLUSION</u>

In light of the inconsistences presented by the BIA's
decision, we remand this matter to the BIA for further
explanation and discussion addressing the offense Brown committed
that triggered the stop-time provision of Section 240A(d).
Accordingly, we STAY Brown's habeas corpus petition pending
remand to the BIA for further explanation consistent with this
opinion.

```
                 IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ORVILLE BROWN                    :         CIVIL ACTION
        Petitioner,              :
                                 :
        v.                       :
                                 :
IMMIGRATION & NATURALIZATION     :
SERVICE                          :
        Respondent.              :         No. 02-CV-2808
```

## O R D E R

**AND NOW**, this          day of January 2003, in consideration

of the Petition for Writ of Habeas Corpus filed by Petitioner,

Orville Brown, (Doc. No. 1) and the Response of Respondent,

Immigration and Naturalization Service, (Doc. No. 9) thereto, it

is **ORDERED** that the Petition for Writ of Habeas Corpus is **STAYED**

**PENDING REMAND TO THE BOARD OF IMMIGRATION APPEALS.**

                                      BY THE COURT:

_____
JAMES McGIRR KELLY, J.